## VARIANCE WHERE THE DEFENDANT WAS CHARGED WITH ARSON.

Circuit Court of Cuyahoga County.

NATHAN BERMAN v. STATE OF OHIO.*

Decided, January 25, 1909.

*Criminal Law—Arson—Immaterial Variance in Warning Owner of Burned Building—Confession of Arson, When Admissible—Motion for New Trial—Bill of Exceptions Showing All the Evidence Necessary.*

1. In a trial for arson where the indictment charged the accused with burning the property of "B. Mirsky," and the evidence showed that it was owned by "Harry Mirsky," it is not error for the court to charge that if the jury found that the person named in the indictment as "B. Mirsky" was the same person as the "Harry Mirsky" who owned the building, the variance would not be fatal.

2. In order to authorize the introduction in evidence of an admission by the accused that he was guilty of arson, it is sufficient to show that the building he confessed burning was in fact burned at the time charged.

3. In order that affidavits used on a motion for a new trial may be considered by a reviewing court, there must be a certificate of the trial judge that the affidavits in question were all the evidence intriduced on the hearing of the motion.

*W. C. Ong* and *D. M. Bader,* for plaintiff in error.
*E. S. Brudno,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Berman was indicted and convicted of arson; the charge in the indictment was that he burned a building on the —— day of December, 1906, which was the property of "B. Mirsky."

---

* Affirmed without opinion, *Berman* v. *State,* 81 Ohio State, 508.

One of the errors complained of in this proceeding is that the court refused to charge that if the property burned was the property of Harry Mirsky no conviction could be had. The evidence clearly showed that the property was owned by Harry Mirsky. The court on this proposition charged that if the jury found that the person named in the indictment as "B. Mirsky" was the same person as the Harry Mirsky who owned the building, the variance would not be fatal.

Section 7215, Revised Statutes, reads:

"No indictment shall be deemed invalid nor shall the trial judgment or other proceeding be stayed, arrested, or in any manner affected by the omission of the words 'with force and arms,' or any words of similar import; nor for the omission of the words 'as appear by the record,' nor for omitting to state the time at which the offense was committed in any case in which time is not of the essence of the offense; nor for stating the time imperfectly; for want of a statement of the value or price of any matter or thing and the amount of damages or injury, in any case where the value or price or the amount of damages or injury, is not of the essence of the offense; nor for the want of an allegation of the time or place of any material fact, when the time and place have once been stated in the indictment; nor for the omission to allege that the grand jurors were impanelled, sworn or charged; nor for any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged; nor for want of averment of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Before the enactment of this section of the statute, to-wit, May 6, 1869, the contention here made would have been sustained. See *Price* v. *State,* 19 Ohio, 423. To the same point is *State* v. *Hill,* 48 West Va., 132. To these authorities might be added many other outside of Ohio where no such statute is in force, but the rule is materially changed in this state by the section referred to.

In the case of *Mulrooney* v. *State,* 26 O. S., 326, the indictment charged that certain property in which a burglary was committed was the property of two persons, naming them. The evidence showed that the property was owned by but one of

these two people.   It was held that this was not a variance be-
cause of our statute.

In the case of *Ratckin* v. *State*, 26 O. S., 420, the charge was
that a crime had been committed at the barn of a party named.
The evidence showed that the building was erected and used as
a place for the storing of tobacco.   It was held that this was not
a fatal variance.

In the case of *Mead* v. *State*, 26 O. S., 505, the indictment
charged that the prisoner murdered Elisha Davidson.   The evi-
dence showed that the person slain was Elijah B. Davison, and
the court say that it was a question for the jury to determine
whether the person actually slain was the person intended by
the name used in the indictment.   In that case the trial court
erred in its finding and in instructing the jury to the effect that
by the name used in the indictment the person actually slain
was the one intended, and for that reason the case was reversed,
although the court in its opinion say that the trial court was
probably right in holding that the person slain was the one in-
tended to be named in the indictment, but say that should have
been left to the jury.

In the case now under consideration it was left to the jury,
and an examination of the record can leave no doubt that it was
the intention of the indictment to name the real owner of the
building, who turned out to be not B. Mirsky but Harry Mirsky.

There was no error on the part of the court in this regard.

It is complained further that the court erred in this regard,
and that it was error on the part of the court in admitting testi-
mony of the witness Cohen with respect to a conversation held
between him and the prisoner after the fire, in which the state
claims that the prisoner admitted the commission of the crime.
It is said that this should not have been admitted because it had
not been shown by the state that the fire which consumed the
building was of incendiary origin and that before a confession
or admission of the prisoner may be used against him, it must
first be shown that the crime had actually been committed by
somebody.   We think that counsel for plaintiff in error mis-
construe the rule in this regard.   Conceding the law to be that

the state can not convict or even that the state can not receive evidence of admissions made by the prisoner, tending to show guilt on his part, unless it be first shown that the thing charged against him as a crime has actually taken place, still when it is shown that the building charged to have been burned by the prisoner at a given time, is shown to have been burned at that time, it is certainly admissible to show that the prisoner admitted that he did the burning. If this were not true, a dead body might be found with a bullet wound indicating that the cause of death was the shooting into the head of the deceased of a pistol bullet, and that immediately after such finding of the dead body a person should admit that he did the shooting, it would have to be held under the contention made, that it must have to be shown by other evidence first, before such admission could be received, that the dead person had actually been murdered. This is so manifestly a misconstruction of the rule as to show its absurdity.

Before the testimony of Cohen was received, it was clearly shown that the building which it was claimed the prisoner fired was actually burned at the time charged. The court was right in admitting the testimony of Cohen as to what the prisoner said to him about it.

At the close of the evidence on the part of the state, a motion was made by the prisoner to have a verdict or not guilty directed; this was overruled. It is urged that this motion should have been granted because of the failure of the state to make a case by its evidence against the prisoner.

The state had shown by Cohen, who testified in a very broken way, because of his not understanding the English. language (and it is somewhat difficult to understand just what he does mean in a part of his testimony), that Berman in talking with him (Cohen) about the burning of this building on Woodland avenue, which is the property that was burned, and the property meant in the indictment, that he (Berman) had benzine and put it around the stove. From the rest of his testimony, broken as it was, it might reasonably be inferred at least that Berman when describing how a store could be burned, was telling how this store was burned.

Jessie Dorff testified that on the night of the fire, just before the fire broke out, she saw members of Berman's family carry goods from the store. She saw them go in and out. Being asked on direct examination if she saw Berman, she said no, but upon cross-examination, she says she saw Berman at the store packing the goods, which the other members of the family were carrying out, but she did not see him carry any out. While the story of this witness, is, when considering all the circumstances of the case, not altogether probable in all its parts, yet if her testimony were believed, or if that part of it were believed in which she testified to seeing these goods being packed up by Berman and carried out of the store just before the fire by members of his family, it would be very strong in showing that in connection with the fact that the fire just afterward broke out, that Berman had something to do with that fire. There was testimony of other witnesses that the fire seemed to start all about the store, or at various places in the store all at one time. This fact, in connection with the evidence to which attention has just been called, might well have induced the jury to believe that these goods were being thus packed and carried out in anticipation of that fire, which he started simultaneously at various places in the store. The two witnesses. to whose testimony attention has specially been called. did not make a first rate showing for themselves by their testimony, but we are not prepared to say that the jury should not have believed that Jessie Dorff did not see what she says she saw nor that Berman did not say to Cohen what Cohen says he said. The court did not err in overruling the motion to direct a verdict for the defendant.

Attention has already been called to the charge of the court in reference to the identity of the person named in the indictment as the person who actually owned the property.

What was said by the court was a proper submission of this question to the jury, and the charge, as a whole, was proper. Indeed, but for this part of the charge, it is not complained of.

A motion was made for a new trial, after the verdict of guilty was returned, and a large number of affidavits were filed

in support of that motion.   Among them, an affidavit stating that counsel for the state, in his closing argument. said in substance, that if the prisoner was a man of good character, he ought to have introduced evidence to establish that.   That it was a sad thing that an honest man was not able to produce anybody to testify that he was such.   From this affidavit it appears that such language was used; that the objection to it was made at the time, but only that Judge Ong said, ''I call the court's attention to this,'' and the court seems to have said nothing.   But the court in its charge said to the jury, that no attention should be paid to this language of the prosecutor. If this language was used by the prosecutor it was exceedingly improper, and it would have been well for the court to rebuke counsel who used it, but we are not called upon to say whether, in the absence of an objection being made at the time, what was said by the court in the charge was sufficient to cure the wrong, and we are not called upon to pass upon that, for the reason that for aught that appears in the bill of exceptions, an affidavit may have been filed denying that this language was used.   There is no certificate in the bill that all the evidence submitted on the motion for a new trial in contained in the bill.   It is certified in the bill that all the evidence introduced or offered at the trial is contained therein.   That evidence, of course, is the evidence introduced prior to the evidence upon which the court acted in passing upon the motion for a new trial, and following that come these affidavits, to one of which attention has been called, and nothing to show that these affidavits constituted all the evidence introduced.   For aught that appears then, it may have been shown either by affidavit or otherwise that the language was not used.

One matter complained of, to which attention has not been called, is the admission of evidence of other fires, in property occupied by the prisoner.   An examination of the record shows that attention was first called to a number of other fires by the prisoner himself, in answer to questions put to him by his own counsel.   We think this opened up the field so as to permit the state to show that there were other fires in buildings

occupied by the prisoner, which he had not admitted or attempted to explain, and that there was no error in the admission of such evidence.

The result is that the judgment is affirmed.